SANDERS v. HENRY C. EASTBURN & SON, Inc. et al.

No. 1677.

United States District Court
D. Delaware.

April 16, 1952.

Louis J. Finger of Richards, Layton & Finger, Wilmington, Del., for libelant.

William F. Lynch, 2nd and Howard L. Williams, of Hering, Morris, James & Hitchens, Wilmington, Del., for respondents.

LEAHY, Chief Judge.

Findings of Fact.

1. Libelant, W. S. Sanders, is a resident of the State of Virginia, engaged in the business of operating tug boats and barges and furnishing these to customers. Libelant now owns and owned during the months of August, September, October and November, 1949, two barges designated as "Sanders No. 2" and "Sanders No. 4".

2. In August, 1949, Libelant entered into a contract with United Paving Company, a New Jersey corporation, whereby Libelant agreed to transport slag from Sparrow's Point, Maryland, located on the Chesapeake River, to Georgetown, Maryland, located on the Sassafras River. Under the contract United Paving was to unload the materials from the barge at Georgetown, Maryland.

3. Respondents, Henry C. Eastburn and Warren C. Eastburn, both of Newark, Delaware, were, during the months of August, September, October and November, 1949, associated together as partners and trading as Henry C. Eastburn and Son in Newark, Delaware. On December 27, 1949, Respondents Eastburn incorporated under the laws of Delaware, and took the name of Henry C. Eastburn and Son, Inc., which is a party to this proceeding by its own consent, and without objection. It has assumed some of the liability of the above partnership in the present cause of action. Henry C. Eastburn and Son, under a contract with United Paving Company, agreed to take complete charge of all unloading and loading of the Sanders' barges.

4. On August 29, 1949, pursuant to the contract between W. S. Sanders and United Paving Company, John C. Robbins, an employee of Henry C. Eastburn and Son, Inc., towed the two aforementioned Sanders' barges from Sparrow's Point to Georgetown. At the time these barges left Sparrow's Point they were each loaded with five hundred tons of slag. The load was not an excessive load for either barge. The slag was held in place on the deck by side boards which rose from the deck to a

height from four to five feet. These side boards were reinforced by triangular steel stanchions which were bolted to the side boards on the out-board side. These side boards were in good condition and the stanchions were either welded or riveted to the deck and were in good condition. There were no holes in the deck of either barge.

5. After the first barge was unloaded by the employees of Henry C. Eastburn and Son, Captain Robbins towed it back to Sparrow's Point to be reloaded and then alternately towed the barges back and forth taking an empty one to Sparrow's Point for reloading while the other barge was being unloaded at Georgetown, Maryland. Captain Robbins continued to tow these barges in this manner until on or about September 21, 1949. On each occasion each barge carried five hundred net tons of slag, which was not an excessive load for either barge.

6. From August 29, 1949, until on or about September 21, 1949, one David Jewell, an employee of Henry C. Eastburn and Son, in the regular course of his employment for Henry C. Eastburn and Son, operated the crane by which the barges were unloaded. The crane had a clam shell bucket known as a one yard bucket made of reinforced steel. The bucket weighed approximately 2500 pounds. Jewell placed the crane on approximately eighteen inches of slag, approximately twenty feet from the barge. The boom on the crane was fifty feet in length. When there was a full load on the barge, the crane operator was able to see into the barge, but as the slag was removed and the barge got lighter, the barge would rise in the water, impairing the crane operator's view. The barges were approximately thirty-four feet in width. While the first few barges were being unloaded, no men were placed on the barges to direct the crane operator. When the barges were nearly empty, the crane operator was unable to see the deck of the barge. As a result, the crane operator drove at least one hole in the center of the barge.

7. Because the boom used was too short to reach the slag from the offshore side of the barge, the crane operator would "throw the bucket"; i. e., swing the boom of the crane in a wide arc from the onshore side of the barge thereby imparting a momentum to the clam shell bucket which enabled said bucket to be carried to a point on the barge further offshore than the farthest edge of the boom. As a result of "throwing the bucket", and because of the restricted view of the crane operator, the bucket of the crane on a number of occasions struck the side boards of the barge breaking and knocking off some of the side boards and knocking down and bending some of the steel stanchions supporting the side boards. On or about September 21, 1949, W. S. Roughton replaced Captain Robbins and followed the same procedure in towing the barges with the same loads. On or about September 21, 1949, Respondents, Henry C. Eastburn and Son, removed the fifty foot crane and replaced it with a crane with a forty foot boom and replaced Jewell with another crane operator.

8. The forty foot boom was too short to permit a proper unloading of the barge. The crane had to be moved as close as possible to the barge, thus further impairing the crane operator's vision of the deck on the inside of the side boards. The crane operator frequently "threw the bucket", striking the deck with great force and punching numerous holes in the deck. As a result of "throwing the bucket", and because of the impaired vision of the crane operator, the bucket on numerous occasions struck the side boards and stanchions supporting the side boards, breaking off the side boards, breaking off some of the stanchions and bending other stanchions. No platform was erected in order to enable the crane operator to get a better view of the deck and of the bucket while it was inside the side boards.

9. The damage was caused by the acts and omissions of the Respondents, Henry C. Eastburn and Son, in failing to provide a crane with a boom of sufficient length to enable their employees to unload the barge properly and by the acts and omissions of the employees of Henry C. Eastburn and Son in failing to put themselves

in a position while operating the crane to see the deck of the barge when the barge was almost completely empty.

10. At the time this hauling operation began, both barges were old and in need of repairs. They were originally built in 1918, and were purchased by Libelant in 1946 from the United States Navy. The wooden siding of each barge was made up of old lumber of odd sizes, and cracked in certain places. Occasional boards were missing. Furthermore, certain of the stanchions were loose, bent, and otherwise out of place. The condition of the respective decks is not clear. However, in order to use the barges further, Libelant was compelled to repair the damage to the barges. Repairs were made but the barges were not restored to their former condition. In order to minimize the repair bill, the holes in the deck were repaired by welding thereto small patches instead of replacing the entire plate. The deck thereby lost a certain amount of strength. In order to further minimize the repair bill, the side boards were not erected as high as they had been prior to the damage caused by the negligence of Respondents' employees. The actual out-of-pocket costs to W. S. Sanders of the repairs made was $1,675.19. Libelant was unable to prove he had either barge chartered for the three-day period they were in the shipyard for repair, and thus is not entitled to three days' charter time. Furthermore, the repairs here in dispute were not the only repairs made to the barges at that time, as bottom-work was done also. Therefore, the full claim for damages will not be allowed. Libelant will be awarded $1,400.00.

11. The damage aforesaid occurred upon the navigable waters of the United States.

### Conclusions of Law

█ 1. This case is within the admiralty jurisdiction of this Court, the damage having occurred upon the navigable waters of the United States.

█ 2. During the months of August, September and October, 1949, the Respondents, Henry C. Eastburn and Son and their employees, in the course of their employment, negligently unloaded slag from barges owned by the Libelant, W. S. Sanders. The negligence of the Respondants, Henry C. Eastburn and Son and their employees, acting in the regular course of their employment, was the proximate cause of damage to the barges of Libelant, W. S. Sanders.

3. Libelant, W. S. Sanders, has made all reasonable efforts to minimize his damages. Respondents, Henry C. Eastburn, Warren C. Eastburn and Henry C. Eastburn and Son, Inc., are liable to Libelant for the damages caused to Libelant's barges in the amount of $1,400.

4. An award for attorney's fees incurred by Libelant in bringing this action will not be allowed.